UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | SUPERSEDING |
| | ) | INDICTMENT 1:13-cr-199 |
| CHARLES HENRY CASTILLO, et al. | ) | |
| | ) | |
| and | ) | and |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | INFORMATION NO. 1:13-cr-274 |
| v. | ) | |
| | ) | |
| SHELICA JESSICA DANIELS, | ) | |
| aka "Red" and "Nina" | ) | |
| | ) | |

### SENTENCING MEMORANDUM

The United States of America, by and through the Edward J. Tarver, the United States Attorney for the Southern District of Georgia and the undersigned Assistant United States Attorney, files this Sentencing Memorandum to aid the Court in imposing a reasonable sentence and resolving Defendants' objections to their respective Presentence Investigation Reports (PSR).[1]

As the information contained in the PSRs demonstrate, and as more fully set forth below, the conduct of Defendants Castillo, Barnes, Hedrick and Daniels was

---

[1]  This memorandum is meant to supplement any argument made by the government at the sentencing hearing as to all of Defendants' objections to the Presentence Investigation Reports in this case.   This Memorandum does not address every objection raised by Defendants and the government reserves the right to address every objection during the scheduled Sentencing Hearing.

not aberrational, but predatory.   Each defendant, with the exception of Hart – who was permitted to plead to a lesser charge due to his limited involvement – subjected an immature and unsophisticated 16-year-old girl to degradation and repeated sexual exploitation through prostitution.   They plied her with methamphetamine to ensure her submission.   And knowing of her inability to refuse, given her ill-advised and coaxed decision to abscond from juvenile electronic monitoring, they used her young body for their financial gain, however slight, not once, but numerous times. Accordingly, the government requests that Defendants Castillo, Barnes, Hedrick and Daniels be sentenced to significant prison terms, followed by at least 10 years' of supervised release.

## Application of the Federal Guidelines post-Booker

In United States v. Booker, 125 S.Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S.Ct. 2531 (2004).   As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, 18 U.S.C. § 3553(b)(1).   Booker, 125 S. Ct. at 756.

Nonetheless, and as the Supreme Court stated, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. See United States v. Gall, 128 S.Ct. 586, 596 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark").   The district court should then consider all of the applicable factors set forth in 18 U.S.C. § 3553(a).   See Id.   And see United States

v. Irey, 612 F.3d 1160, 1183-84 (11th Cir. 2010)   These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); and the need to avoid unwarranted sentence disparities (18 U.S.C. § 3553(a)(6)).

The Guidelines are the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions. See United States v. Rita, 127 S.Ct. 2456, 2464 (2007).   The Sentencing Commission has continued to study district court and appellate sentencing decisions and to "modify its Guidelines in light of what it learns." Booker, 125 S. Ct. at 766-67 (the Sentencing Commission will continue "collecting information about actual district court sentencing decisions   . . . and revising the Guidelines accordingly").

The Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a).  Any Guidelines calculation is based on the individual characteristics of the offense and the offender, as required by Section 3553(a)(1).  The Guidelines thus seek to implement – in a fair and uniform way – the offense specific

3

characteristics that, themselves, comprise the "individualized assessment" the Supreme Court commends in Gall.   See Gall, 128 S.Ct. at 597.   It thus remains true that, absent unusual circumstances, the sentence in a criminal case should fall within the Guideline range as determined by the district court.   Though in this case unusual circumstances exist – such as the limited timespan over which the criminal conduct occurred – that may warrant an exception to the preference for Guideline sentencing, the government respectfully recommends that the Court still impose significantly long sentences of imprisonment, to effectuate the requirements set forth in Section 3553(a).

For instance, the repetitive abusive behavior – though perhaps short-lived due to law enforcement detection – weighs in favor of a higher penalty, and supports a significant sentence of imprisonment.   In addition, the fact that the offenders took advantage of the vulnerable nature of the victim and coaxed her into engaging in the illicit conduct, providing her with highly addictive drugs along the way, also favors the significant penalty sought by the United States in this case.

In addition, a significant prison sentence is appropriate because it will reflect the seriousness of the offense and provide a just punishment.   The crimes of conviction are by their very nature serious. Their seriousness is reflected in part by the maximum sentence of Life that Congress has legislated, and by the base offense level of 30, set forth in the sentencing guidelines.

In United States v. Pugh, 515 F.3d 1179, 1195 (11th Cir. 2008), the Eleventh Circuit cites to the "just deserts" concept reflected in the legislative history of Section

4

3553(a), which provides in part:

> ... the sentence should reflect the gravity of the defendant's conduct.   From the public's standpoint, the sentence should be of a type and length that will adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense. From the defendant's standpoint the sentence should not be unreasonably harsh under all the circumstances of the case and should not differ substantially from the sentence given to another similarly situated defendant convicted of a similar offense under similar circumstances.

S.Rep. No. 98B225, at 75B76, 1984 U.S.C.C.A.N. at 3258B59.   See also Irey, 612 F.3d at 1206.

Here, first Defendant Daniel for days or weeks, and then in concert, Defendants Castillo, Barnes, Hedrick and Hart exploited a 16-year-old girl over the course of several days, and exposed and offered her to strangers for numerous sexual encounters in violation of the law.   The full impact on the victim of such abuse and exploitation is not yet known, but a long-lasting negative impact is certain.   As such, Defendants' criminal conduct demands the imposition of significant sentences of imprisonment.

As stated above, the first step in the sentencing process is the accurate determination of the sentencing guideline range.   The sentencing guidelines here reflect the seriousness of Defendants' abhorrent behavior.

### The Base Offense Level For Conspiring to Engage in Sex Trafficking of a Minor is 30

Defendants Castillo, Barnes, Hedrick, and Daniels (in case CR113-274), all pled guilty to the charge of Conspiracy to Engage in Sex Trafficking of a Minor,

under 18 U.S.C. §1954(c).   United States Sentencing Guideline (U.S.S.G.) does not provide a specific offense guideline for that conspiracy offense.   Therefore, pursuant to U.S.S.G. 2X1.1 which addresses how courts are to determine the applicable guideline range under such circumstances, the Court is directed by the Sentencing Commission to use the base offense level for the substantive offense underlying the conspiracy – here, 18 U.S.C. 1591(a), (b)(2).[2]   The base offense level for that substantive offense is 30.   <u>See</u> U.S.S.G. 2G1.3(a)(2).   <u>See generally</u> <u>United States v. Li</u>, 1:12-CR-00012-2, 2013 WL 638601 (D. N. Mar. I. Feb. 21, 2013.)

Defendant Hedrick's assertion that, instead, the lowest base offense level under U.S.S.G. 2G1.3(a) applies because Hedrick was not convicted of 18 U.S.C. 1591(a), sidesteps the requirement that courts use the base offense level of the *substantive offense* underlying the conspiracy.   Here, U.S.S.G. 2G1.3(a)(2) provides the proper base offense level for the substantive offense underlying Hedrick's offense of conviction; U.S.S.G. 2G1.3(a)(4) does not.   Accordingly, Hedrick's objection should be overruled.

### The Enhancement for Unduly Influencing a Minor Applies

Pursuant to U.S.S.G. 2G1.3(b)(2)(B), a two-point enhancement is appropriate where a participant unduly influenced a minor to engage in prohibited sexual conduct.   The related application note provides:

---

[2]   18 U.S.C. 1951(b)(1) – which calls for a higher base offense level under U.S.S.G. 2G1.3(a)(1) – relates to sex trafficking where "the offense was effected by means of force, threats of force, fraud, or coercion described in subsection (e)(2)," or involved a minor under the age of 14. Neither such substantive sex trafficking offense was alleged (or applies) here.

6

> [i]n a case in which a participant is at least 10 years older than the
> minor, there shall be a rebuttable presumption that subsection
> (b)(2)(B) applies.   In such a case, some degree of undue influence
> can be presumed because of the substantial difference in age
> between the participants and the minor.   U.S.S.G. 2G1.3
> Commentary Note 3(B).

At the time of the criminal conduct here, the victim V.B.H. was 16 years old, while Castillo was 31, Barnes 29, Hedrick 29, and Hart 34.   The onus, therefore, rests on Defendants Castillo, Barnes and Hedrick to rebut the presumption of undue influence.   That presumption does not apply to Daniels, however, who is 2 months shy of being 10 years older than V.B.H.   Nevertheless, all four Defendants qualify for the enhancement.

In determining whether a defendant's conduct rebuts the presumption, courts "may look to a variety of factors, including whether [the conduct] displays an abuse of superior knowledge, influence and resources." See United States v. Root, 296 F.3d 1222, 1234 (11th Cir.2002).   See also United States v. Harrison, 535 F. App'x 829, 831-32 (11th Cir. 2013), United States v. Jones, 546 F. App'x 946 (11th Cir. 2013), United States v. Baker, 529 F. App'x 987 (11th Cir. 2013).

In Harrison, the Eleventh Circuit found that the enhancement applied when the offender's superior knowledge was evidenced by his:

> (1) knowledge of computers and the internet to create
> advertisements depicting the victim; (2) instructing the victim on
> how to answer the phone, how much to charge, and generally
> training the victim on the details of her work; and (3) advising the
> victim where in the motels to take her customers.

Harrison, 535 F. App'x at 831, citing United States v. Vance, 494 F.3d 985, 996 (11th Cir.2007) (observing that the defendant had used his knowledge of computers and

the internet to unduly influence the "victim").   The Eleventh Circuit also found
Harrison's superior resources to be evidenced by his:

> (1) laptop computer, used to advertise the victim for sexual
> purposes; (2) payment for the internet advertisements and motel
> rooms; (3) purchasing resources for the victim, including sex
> devices, lubricant, and condoms; and (4) transporting the victim in
> his vehicle from her home to motels or private residences.

Harrison, 535 F. App'x at 831.   Lastly, the court there found superior influence
when Harrison convinced the victim to engage in prostitution and give Harrison half
the proceeds.   Id.

Similarly, the Eleventh Circuit found that the undue-influence enhancement
applied in Baker, where the offender promised the victim large sums of money, and
provided her with needed logistical and financial support, such as instructions on
how much to charge, transportation to "dates," photographed her to attract clients,
and scheduled her prostitution dates.   Baker, 429 F. App'x at 988.

The evidence in the instance case likewise supports the undue-influence
enhancement.   As set forth in detail in the various Presentence Investigation
Reports (PSR), Castillo, Barnes, Hedrick and Daniels displayed an abuse of superior
knowledge, influence, and resources.   Some examples include:

Superior Knowledge and Resources

- Defendant Daniels created and posted advertisements on backpage.com
  advertising V.B.H.'s availability for prostitution;

- Daniels used her laptop computer to create and post ads;

- Daniels used her phone to receive customer calls;

- Daniels paid for ads on backpage.com

- Daniels provided hotel or alternative location for V.B.H. dates;

- Daniels provided V.B.H. housing, food, and drugs;

- Defendants Castillo, and Barnes (with Hart's assistance) created and posted advertisements on backpage.com and elsewhere advertising V.B.H.'s availability for prostitution;

- Castillo used his computer and phone to post ads and receive customer calls/messages;

- Defendant Castillo created a script and established the prices for V.B.H.'s prostitution dates;

- Defendant Castillo had client lists and media equipment to promote the sex trafficking;

- Hedrick transported V.B.H. and co-conspirators to hotels and "out call" dates;

- Hedrick provided her own apartment and lingerie for creation of prostitution ads;

- Castillo, Barnes and Hedrick responded to customer inquiries and set up dates;

- Castillo and Barnes paid for hotel rooms used for "dates;"

- Barnes and Castillo collected and divided the money from customers;

- Castillo paid for ads on backpage.com;

- Castillo provided housing and food for V.B.H. who would otherwise be

homeless or incarcerated.

Superior Influence:

- Daniels convinced V.B.H. to remove an ankle monitor and live with Daniels in order to earn money and drugs through prostitution;

- Daniels provided V.B.H. with methamphetamine throughout the conspiracy;

- Barnes encouraged V.B.H., who faced threat of incarceration, to leave Daniels and begin to be pimped out by Barnes;

- Barnes provided V.B.H. with methamphetamine throughout conspiracy;

- Hedrick provided comfortable environment for V.B.H. to pose for pictures to be used in prostitution ads;

In light of the available evidence, the two-point enhancement for undue influence applies to Defendants Castillo, Barnes, Hedrick and Daniels, and their objections to its application should be overruled.

Daniels' assertion that the application of this enhancement amounts to double-counting must also fail.  See United States v. Smith, 719 F.3d 1120, 1125 (9th Cir. 2013).

### The Enhancement for Use of a Computer Applies

Defendants Castillo and Daniels object to the application of the two-point enhancement under U.S.S.G. 2G1.3(b)(3)(B), which applies when an offense involved the use of a computer to entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with a minor.  Here, ads posted on backpage.com and

other websites by Daniels and Castillo specifically solicited customers for the purpose of enticing and offering V.B.H. – a 16-year-old girl – for commercial sexual activity.   In addition, both Daniels and Castillo received responses from customers through their computers at times when they were harboring and exercising a significant level of supervisory control over V.B.H.   Because the conduct by each of the Defendants falls squarely within the language of the enhancement, it should be applied here.   <u>See</u> <u>United States v. Winbush</u>, 524 F. App'x 914, 916 (4th Cir. 2013); <u>United States v. Burnett</u>, 377 F. App'x 248, 252 (3rd Cir. 2010).

**Defendants Engaged in a Pattern of Activity Involving Prohibited Sexual Conduct Triggering the Enhancement Under 4B1.5(b)**

Defendants Daniels and Hedrick object to the five-point enhancement under U.S.S.G.4B1.5(b) claiming their offense conduct did not warrant such an enhancement.   However, as explained by the U.S. Probation Officer in response to each objection, the facts support the application of this enhancement.

Specifically, the offense of conviction is a "covered sex crime" in that Defendant was convicted of a conspiracy to commit an 18 U.S.C. 1591 offesne (sex trafficking of a minor), and engaged in a pattern of activity involving that same "prohibited sexual conduct."

A "pattern of activity" requires only two separate occasions involving "prohibited sexual conduct," and <u>can</u> include the offense of conviction.   Prohibited sexual conduct includes offenses listed under 18 U.S.C. 2426(b)(1)(A) and (B), which includes 18 U.S.C. 1591 offenses.

Here, Defendant Daniels has admitted to prostituting V.B.H. – a minor – out

11

to customers on several occasions, in varying locations.   For instance, she admitted

in her post-arrest interview (See Daniels PSI para. 26-27,) prostituting out V.B.H.

from a Super 8 Motel on Gordon Highway, and also admitted arranging a "date" with

a Mr. Norris at Norris's South Carolina residence.[3]

Similarly, Defendant Hedrick admitted to facilitating the prostitution of

V.B.H. on several occasions at different locations.   (See Hedrick PSR at para.

21-23.)   For instance, Hedrick drove Castillo, Barnes and V.B.H. to Masters Inn on

one occasion so V.B.H. could meet prostitution customers.   Hedrick also drove

V.B.H. to an area on Wrightsboro Road for a "date."   And Hedrick recounted using

another Washington Road hotel for the prostitution of V.B.H., and talking to

customers, as well as an FBI undercover agent while assisting in the prostitution

and sex trafficking of V.B.H.

Accordingly, though only one victim was involved, given the pattern of

prohibited sexual conduct perpetrated against V.B.H. by each Defendant the

five-point enhancement under U.S.S.G. 4B1.5(b) should apply to Castillo, Barnes,

Hedrick and Daniels, and the objections of Hedrick and Daniels should be overruled.

See generally United States v. Brattain, 539 F.3d 445 (6th Cir. 2008).

### A Significant Sentence Would Be Consistent With Other 11th Circuit Cases

Recognizing the significance of this type of criminal activity, courts have

imposed lengthy sentences involving similarly situated defendants.   See United

---

[3]  This conduct would also qualify as "prohibited sexual conduct" in that it qualifies
as a violation of 18 U.S.C. 2423, a Chapter 117 offense.

States v. Rivera, 558 F. App'x 971, 973 (11th Cir. 2014) (unpublished) (sentenced defendants found guilty of sex trafficking and conspiracy to 235 months and 292 months); United States v. Mozie, 752 F.3d 1271, 1280 (11th Cir. 2014) (affirming a guideline sentence of Life against defendant who was convicted at trial of sex trafficking and other offenses, even where co-defendant who pled guilty and cooperated received a 156-month sentence); United States v. Jones, 546 F. App'x 946 (11th Cir. 2013) (unpublished) (affirming a 360-month sentence for defendant convicted of sex trafficking and conspiracy offenses involving three victims following trial); United States v. Cortes-Castro, 511 F. App'x 942 (11th Cir. 2013) (unpublished) (affirming 180-month sentence for sex trafficking conspiracy conviction following guilty plea with stipulated guideline parameters); United States v. Harrison, 535 F. App'x 829, 831-32 (11th Cir. 2013) (unpublished) (156-month sentence for sex trafficking of a minor); United States v. Baker, 529 F. App'x 987 (11th Cir. 2013) (unpublished) (292-month sentence for sex-trafficking a minor over a three-month period).

Though federal prosecution often subjects defendants to lengthier prison terms than state charges, in Georgia, sex-traffickers are subject to a mandatory minimum of 10 years imprisonment, with a maximum of 20 years, see O.C.G.A. 16-5-46, as the sexual exploitation of our children, understandably, cannot be tolerated.

For the foregoing reasons, and those to be argued at the sentencing hearing scheduled in this case, the government requests that Defendants Castillo, Barnes,

Hedrick and Daniels be sentenced to significant prison terms, followed by at least 10 years' of supervised release.

Respectfully submitted, this 19th day of August, 2014.

EDWARD J. TARVER
UNITED STATES ATTORNEY

/s/ *Nancy C. Greenwood*
_____
Nancy C. Greenwood
Assistant United States Attorney
Georgia Bar No. 309179
Post Office Box 2017
Augusta, Georgia   30903
(706) 724-0517

## CERTIFICATE OF SERVICE

This is to certify that I have this 19th day of August, 2014, served counsel in this case with a copy of the foregoing through the electronic filing system.


/s/ *Nancy C. Greenwood*
_____
Nancy C. Greenwood
Assistant United States Attorney